**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | MDL Docket No. 4:03CV01507-BRW |
| | : | 4:06CV00299-BRW |
| **PREMPRO PRODUCTS LIABILITY** | : | |
| **LITIGATION** | : | |
| | : | |
| | : | |
| **SONDRA WELCH** | : | **PLAINTIFF** |
| | : | |
| **v.** | : | |
| | : | |
| **WYETH,** *et al.* | : | **DEFENDANTS** |

## ORDER

Pending is Plaintiff's Rule 59 Motion for New Trial (Doc. No. 319). Defendants have responded.[1] Plaintiff alleges three grounds for a new trial: (1) inappropriate contact between the bailiff and jury; (2) juror misconduct, *i.e.*, reading and discussing newspaper accounts of the trial before reaching a verdict; and (3) the admission of "inadmissible hearsay."

A hearing was held on October 19, 2012, and telephone conferences were held on October 22, 2012 with the two jurors who were unable to attend the hearing.

## I.   BACKGROUND

This case is one of thousands in which the plaintiffs allege that the defendants' hormone replacement therapy drugs caused their breast cancer. Primarily, the claims are based on a failure to warn theory. Six cases (including this one) have been tried in the Eastern District of Arkansas, and many more have been tried in other federal and state courts across the United States. Following a two week jury trial in this case, the jury found, on August 29, 2012, that Defendants failed to adequately warn about the known or knowable risks of their drugs, but that

---

[1]Doc. No. 321.

Plaintiff did not prove that this failure to warn caused her injuries.[2]  A judgment was entered for Defendants.[3]

On August 30, 2012, Juror Michael Hill called my office and I spoke with him briefly.  I relayed the conversation to counsel of record in an email that afternoon.  The email reads:

> CONFIDENTIAL
>
> Dear Counsel:
>
> Mr. Michael Hill, juror number 12, called me this morning to report something that is bothering him. He told me that on the first day of trial the bailiff remarked to the jurors (at some point -- I don't recall exactly when) that he had heard testimony of this nature before. Mr. Hill did not remember the exact words, but he said he got the idea that this was not the first trial in the Eastern District of Arkansas involving these issues.
>
> He said that this bothered him a little, but he didn't think too much of it at the time.
>
> Yesterday, after the verdict had been returned and the eleven jurors were waiting in the jury room for me to come visit with them, one or more jurors indicated that they knew there had been previous litigation regarding the issues they had just heard.
>
> After I asked the jurors about things we might do to make the courthouse more friendly for future jurors, one juror asked me if I had tried cases similar to this in the past. I told them that I had and that this was the sixth trial. Another juror then asked me how the others came out, and I told them.
>
> I try to avoid talking about the case itself, but I felt it was fair to answer their specific questions.
>
> Of course, in due time, I will look into what, if anything, the bailiff said to the jurors about previous trials (I will go through normal channels to do this). Meanwhile, however, I wanted to bring this matter to your attention as soon as possible.
>
> My initial reaction is to do nothing except, in due course, to look into the bailiff matter. Questions by both sides during the course of this trial made it clear that

---

[2]Doc. No. 311.

[3]Doc. No. 336.

there had been other trials involving breast cancer and HRT -- involving some of the same evidence and witnesses these jurors were seeing and hearing. Accordingly, I see no reason to develop the matter further, but I am putting this before you to let you react if you deem it appropriate.

Please let me know, as soon as possible, whether you want me to take this matter further insofar as the verdict is concerned.

I look forward to hearing from you. I think it best to keep this on a confidential basis at this point in time.

Cordially,

B.R. Wilson[4]

In a response email, Defendants indicated that they agreed with my proposed course of action. Plaintiff responded:

Plaintiffs are concerned by the Court's e-mail advising of the issue involving the bailiff's communications with the jurors during trial. We agree with the Court's decision to conduct an inquiry into this matter and look forward to the results of that inquiry. Plaintiffs reserve any and all options for post-trial remedies, whether based on the Court's inquiry or independent of the results of the inquiry.[5]

After cerebrating on the issue, I sent the following email to counsel on September 6, 2012:

Dear Counsel:

Based on my conversation with the juror, I am of the initial opinion that I need to take no action other than bringing this up with the other members of the court, which will probably result in a conference with all CSOs about conversations with jurors.

The juror indicated that the bailiff did not say anything about the results in any other trial.

As I stated earlier, the jurors knew that there had been several other trials in the MDL/Prempro cases because of evidence adduced by counsel for both parties.

---

[4]Doc. No. 329-1.

[5]*Id*.

3

> You are free to do whatever you wish with the information I have provided. As stated, I do not believe that any "corrective action" is in order, other than the "schooling" of the CSOs mentioned above.
>
> BRW[6]

As has been customary in these cases, Defendants filed a Motion for Leave to Speak With Jurors on September 6, 2012.[7] The motion was granted the next day.[8]

On September 23, 2012, Plaintiff filed a Rule 59 Motion for New Trial asserting that a new trial should be granted because a bailiff provided the jurors with "extraneous prejudicial" information; there was juror misconduct; and "inadmissible hearsay" was admitted during trial. In support of her allegations regarding the bailiff and juror misconduct, Plaintiff attached the affidavit of juror Michael Hill. The affidavit reads:

> I, Michael Hill, hereby declare that all of the following are true, to the best of my personal knowledge and based upon information and personal belief.
>
> I served as Juror Number 12 in the hormone therapy case of Mrs. Welch that took place before Judge Wilson during the month of August 2012. I was concerned by some things that occurred during my jury service. I thus called Ms. Littlepage's office on the afternoon of August 29, 2012 (after I had been released from jury duty). I left a message for her to return my call but no-one called me back. I then called the court and explained that there was a conversation that took place between the bailiff and members of the jury that I felt was inappropriate. Ms. Natasha Hanberry of Ms. Littlepage's office called me back on September 7, 2012. She apologized for not contacting me earlier but explained that no-one could return my call until the court entered an order permitting contact with jurors. I related to Ms. Hanberry the following information:
>
> > • On the first day of trial, a female bailiff told members of the jury that this was going to be a long trial with a lot of boring evidence. She said that she had already sat through four or five of these trials and only one trial was won. Members of the jury discussed what the bailiff had said after she left.

---

[6]*Id.*

[7]Doc. No. 317.

[8]Doc. No. 318.

4

> • During the trial, there was a discussion amongst members of the jury regarding a newspaper article that ran in the Little Rock newspaper during the second week of the trial about the case. I believe the article detailed the number of previous losses.
>
> • After we returned our verdict, some of the jurors once more discussed that only one previous trial had been won in Arkansas. Later, Judge Wilson came to the jury room and spoke with us. A female juror who had previously discussed the outcome of the prior trials asked Judge Wilson directly about the previous trials and how many had been won. I was puzzled by her question since she already knew the answer to her question and had discussed it with the other jurors.[9]

On October 9, 2012, I scheduled an in-court hearing to discuss the points raised by Plaintiff's Motion for New Trial.[10] The jurors and bailiff were to be witnesses. In the Order, I set out the ground rules for the hearing: (1) F.R.E. 606 would govern; (2) the parties could submit proposed questions for the jurors and bailiff; and (3) I would ask all the questions.

In an October 16, 2012 filing, Plaintiff set out several objections to the proposed hearing and process leading up to the hearing.[11] Plaintiff also appeared to indicate that I should recuse.

## II.  DISCUSSION

### A.  Recusal

Based on some hefty assumptions in Plaintiff's Notice of Objections, Plaintiff suggested that I should recuse from hearing this matter. Plaintiff's primary argument is that because I had "obtained information from Mr. Hill" I should allow another judge to consider the issues.[12] As I pointed out in my August 30, 2012 email and in my October 17, 2012 Order addressing

---

[9]Doc. No. 319-3.

[10]Doc. No. 323.

[11]Doc. No. 327.

[12]Doc. No. 338.

5

Plaintiff's objections,[13] Mr. Hill called my office and the call was forwarded to me (I do not screen my calls). Mr. Hill conveyed his concerns, and I listened. When the call was over, I emailed the information to the parties[14] and asked for suggestions on how to proceed.

Plaintiff's position is that the "appropriate approach [was] to stop the conversation [and] to immediately convene a hearing so that these things are in the open."[15]

With all due immodesty, I must say that I think the issues were handled appropriately and Plaintiff's primary objections were not supported by the record.

### B. Bailiff's Comments to Jury

After the jury was seated and returned to the jury room, the bailiff working with the jury gave the jurors a "briefing" in which she told the jurors about the day-to-day procedures of being a juror, *e.g.*, where to meet each day; breakfast is provided in the morning; where to park; how to get a bathroom break during trial; *etc.* Apparently this is customary. In this instance, the bailiff also re-emphasized the importance of paying attention and not being afraid to ask for breaks, because the trial could be long and the evidence could be boring.[16]

Relying on juror Michael Hill's affidavit, Plaintiff asserts that a "Court Security Officer told the jury on the first day of the trial that she had sat through four or five trials, it was going to be a long trial with a lot of boring evidence and the plaintiff had only won one of the previous

---

[13]Doc. No. 329.

[14]*See* Doc. No. 329-1.

[15]Doc. No. 338.

[16]*Id.*

6

trials. It is also clear that the jury discussed the Court Security Officer's comments after she left."[17] Plaintiff contends that these comments were "unduly prejudicial to Plaintiff."[18]

Plaintiff's assertion that the bailiff informed the jurors that "plaintiff had only won one of the previous trials" is incorrect. First, Mr. Hill's affidavit referred only to the fact that "only one trial was won"[19] -- there was no reference as to who had won. Second, at the hearing when I suggested to Mr. Hill that he'd previously indicated that the bailiff told the jury that "plaintiff had only won one of [the previous trials]," he said that my statement was "not quite accurate."[20] Later, he unequivocally testified that the jurors never were aware of which party had won or lost previous trials. During the hearing, every other juror testified that the bailiff made no reference to the results of previous trials.

Though the better practice would have been for the bailiff not to have mentioned earlier trials, the fact that she did not reference the results of the earlier trials makes it impossible for either party to claim a potential prejudice. Furthermore, as I noted in my August 30, 2012 email, "[q]uestions by both sides during the course of this trial made it clear that there had been other trials involving breast cancer and HRT -- involving some of the same evidence and witnesses these jurors were seeing and hearing."[21]

Additionally, the bailiff's comments about a long trial and boring evidence were nowise prejudicial. It appears to me that she was making the point that the jurors should do their best to

---

[17]Doc. No. 319.

[18]*Id.*

[19]Doc. No. 319-3.

[20]Doc. No. 338.

[21]Doc. No. 329-1.

7

pay attention to the testimony and should feel free to request breaks if they noticed their attention was starting to lag -- based on the jurors' post trial testimony, that's exactly how her message was perceived.

"The party attacking the verdict always has the full burden of proving that the jury was exposed to extraneous prejudicial information or outside influence."[22] "In a civil case, the exposure of jurors to materials not admitted into evidence mandates a new trial only upon a showing that materials are prejudicial to the unsuccessful party."[23] "The district court must consider relevant testimony and other evidence as to what occurred to determine 'whether there is a reasonable possibility that the communication altered the jury's verdict' . . . ."[24]

Based on the totality of the evidence, there is no reasonable possibility that the jury's verdict was altered by the bailiff's comments to the jury that the trial could be long and boring or that there were previous trials.

### C.  Newspaper Article

Regarding the newspaper article, Mr. Hill's affidavit reads: "During the trial, there was a discussion amongst members of the jury regarding a newspaper article that ran in the Little Rock newspaper during the second week of the trial about the case. I believe the article detailed the number of previous losses."[25] Plaintiff contends that this "misconduct further exposed the jury to the taint of the extrinsic evidence concerning the number of previous trials and the results of

---

[22] 27 CHARLES ALAN WRIGHT & VICTOR JAMES GOLD, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 6075 (2d ed. 2007).

[23] *Moore v. American Family Mut. Ins. Co.*, 576 F.3d 781, 787 (8th Cir. 2009) (quoting *Peterson ex rel. Peterson v. General Motors Corp.*, 904 F.2d 436, 440 (8th Cir.1990)).

[24] *Moore*, 576 F.3d at 787 (citations omitted).

[25] Doc. No. 319-3.

those previous trials."[26]  Plaintiff also noted that "[t]he misconduct is particularly egregious here since several jurors read the newspaper article during the second week of the trial and the article was discussed amongst the jurors."[27]  Plaintiff's conclusions are unsupported.

During the hearing, Mr. Hill clarified that the jurors simply discussed that they had heard there was an article in the paper, but "nobody ever mentioned any details of it."[28]  Mr. Hill testified that "[n]o one indicated that they knew for sure which side [the article] was favorable to . . . ."[29]  Every other juror's testimony was consistent with Mr. Hill's recollection -- they were aware of the fact that the newspaper published an article about the trial, but no one was aware of, or discussed, the substance of the article.

Finally, even if the facts were as Plaintiff had originally asserted, it seems to me that Plaintiff might well be estopped from alleging potential prejudice from the jurors' knowledge of previous trials, or even the outcome of previous trials.  In this case, all of the jurors completed jury questionnaires before trial, and two of the jurors -- who were seated on the jury without objection -- indicated that they previously had heard of lawsuits involving hormone replacement therapy products.  One juror indicated that she had read in the newspaper that the companies were being sued because of alleged breast cancer injuries.  The other juror indicated that she had heard that "lawsuit [was] lost."[30]  If Plaintiff did not deem the jurors' knowledge worthy of striking them from the jury before trial, its hard to imagine how knowledge of previous cases or

---

[26]Doc. No. 319.

[27]*Id.*

[28]Doc. No. 319-3.

[29]Doc. No. 338.

[30]*See* the Court's Exhibits 1 and 2 from the October 19, 2012 hearing.

9

their outcomes would present prejudice now.   And, again, throughout this trial, the lawyers and witnesses repeatedly referenced the fact that there had been previous trials.

Plaintiff cannot establish the reasonable possibility of prejudice based on the jurors' knowledge of the mere existence of articles in the newspaper.

Viewing the post trial proceedings as a whole, I believe the jury is to be heartily commended for its conduct throughout the trial.

### D.     "Inadmissible Evidence"

Plaintiff contends that she is entitled to a new trial because "the Court allowed Defendants to cross-examine Dr. Parisian [Plaintiff's regulatory expert] using prior hearsay testimony of two witnesses, Susan Allen and Leon Speroff."[31]

"A new trial is not warranted on the basis of an evidentiary ruling unless the evidence was so prejudicial that a new trial would likely produce a different result."[32]  Plaintiff's claim of prejudice is belied by the jury's verdict.  Dr. Parisian, Plaintiff's regulatory expert, testified regarding the inadequacies in Defendants' labels.  Defendants attempted to impeach Dr. Parisian's testimony by pointing out that other experts believed that the labels were adequate. Clearly, the "inadmissible evidence" failed to persuade the jury, since the jury found that "Plaintiff prove[d] by the greater weight of the evidence that [Defendants] inadequately warned about a known or knowable risk of [their drugs]."

Because the jury sided with Plaintiff's expert on the issue of inadequate warnings, Plaintiff is unable to show any prejudice from the admission of the evidence used during the cross-examination of Dr. Parisian.

---

[31]Doc. No. 319.

[32]*Bevan v. Honeywell, Inc.*, 118 F.3d 603, 612 (8th Cir. 1997).

## CONCLUSION

Based on the findings of fact and conclusions of law above, Plaintiff's Rule 59 Motion for New Trial (Doc. No. 319) is DENIED.

IT IS SO ORDERED this 24th day of October, 2012.

>/s/ Billy Roy Wilson
UNITED STATES DISTRICT JUDGE